UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 19-CR-268 (TSC) |
| v. | |
| FABIAN EDILSON TORRES CARANTON, also known as "Cassius" and "David," | |
| Defendant | |

## JOINT STATEMENT OF STIPULATED FACTS

The statement of facts does not purport to include all of the Defendant's illegal conduct during the course of his charged offense. Nor does it purport to be an inclusive recitation of all that the Defendant heard, knew, or witnessed concerning the illegal activities of himself or those of his conspirators. It represents sufficient information for the Court to find a factual basis for accepting the Defendant's guilty plea in the above-captioned matter and is not intended to represent all of the Defendant's relevant conduct for sentencing purposes. Had the Defendant proceeded to trial, the Defendant agrees that the Government's evidence would show the following beyond a reasonable doubt:

1.      From in or around July 2018 and continuing thereafter up to and including October 2018, in the countries of Colombia, Mexico, and the United States, the Defendant, Fabian Edilson Torres Caranton, did unlawfully, knowingly, willfully and intentionally, combine, conspire, confederate and agree with other co-conspirators, both known and unknown, to commit the following offense against the United States: to wit, to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, intending, knowing, and having reasonable cause to believe that such substance would

be unlawfully be imported into the United States in violation of 21 U.S.C. §§ 959, 960(b)(1)(B)(ii), and 963.

2.      During the course and in furtherance of the conspiracy, the Defendant operated in Colombia as a coordinator, intermediary, and lieutenant for the Bloque Roberto Vargas Gutierrez of Clan Del Golfo ("CDG")—a Colombian paramilitary and multibillion-dollar Transnational Criminal Organization ("TCO").  CDG is one of Colombia's largest and most powerful drug cartels with its membership in the thousands.  CDG's primary source of income is from cocaine trafficking, which it uses to fund its paramilitary activities.  The Defendant worked with co-conspirators, including other high-level members of CDG, to commission the manufacture of 500 kilograms of cocaine, to deliver shipments, and secure payment.

3.      In and around July 2018, the Defendant and an individual seeking to broker the purchase of cocaine on behalf of Mexican buyers attended a meeting with another member of CDG at a ranch in or near Caucasia, Colombia.  During the meeting, the other member of CDG authorized the production of 500 kilograms of cocaine which would be transported from Colombia into and through Central America for delivery to Mexican buyers for ultimate transport and delivery to the United States.  The other member of CDG quoted a price of $2000 U.S. dollars per kilogram of cocaine, which included taxes and transportation to Monteria, Colombia.

4.      Following a second meeting between the Defendant and another member of CDG, the Defendant met with a Confidential Human Source (CHS) and reported that the agreement was confirmed, that the cocaine would be produced in a laboratory located in Coralito, Colombia, and that the CHS that would receive further instructions for making downpayment.

5.      In late August 2018, the prospective buyers provided payment in three installments during three separate meetings to the Defendant's co-conspirators. Also in late August 2018, a Colombian National Police officer, acting in an undercover capacity ("CNP UC") as a representative for the buyers, met with one of the Defendant's co-conspirators for the purpose of inspecting the warehouse where the shipment would be stored following the sale.

6.      From late August to mid-September 2018, the CHS and the Defendant spent several days at the laboratory in or around Coralito, Colombia, where the cocaine shipment was being manufactured. Coralito, Colombia is in the La Guajira Department, which was under the command of a CDG military commander during this time.

7.      On September 16, 2018, in Valledupar, Colombia, the Defendant and the CHS provided delivery of 191 kilograms of cocaine to a CNP UC posing as a representative for the buyers. Following this exchange, on behalf of CDG, the Defendant and the CHS received a partial payment of 802 million Colombian pesos for the shipment.

8.      On October 16, 2018, in Cartagena, Colombia, the Defendant and the CHS provided delivery of 172 kilograms of cocaine to a CNP UC. Following this exchange, on behalf of CDG, the Defendant and the CHS received another partial payment of approximately 550 million Colombian pesos for the shipment.

9.      The Defendant and his co-conspirators agreed to the sale, arranged for the production of 500 kilograms of cocaine, found a stash house for the cocaine, and accepted money in return for the cocaine. A senior member of CDG and co-conspirator, provided authorization and approval for the deal to transpire. A co-conspirator produced the cocaine in his laboratory. Another co-conspirator provided a safe house for the cocaine. The Defendant delivered 363 kilograms of cocaine and received two installment payments. In total, the Defendant and his co-

conspirators received six payments, totaling approximately 2.3 billion Colombian pesos.

10.     The Defendant admits that the total amount of cocaine involved in this conspiracy for which he had actual knowledge and involvement was over 450 kilograms. Further, the Defendant admits that he knew and had reasonable cause to believe that the cocaine would be unlawfully imported into the United States. Specifically, the Defendant was informed that the cocaine was destined for Mexico-based buyers who intended to further distribute the cocaine in Houston, Texas.

11.     The Defendant agrees venue and jurisdiction lie with this Court pursuant to 18 U.S.C. § 3238.

12.     The Defendant also agrees that his participation as a conspirator in the above-described acts were in all respects knowing, intentional, and willful, reflecting an intention and deliberation to do something the law forbids, and were not in any way the product of any accident, mistake of law or fact, duress, entrapment, or public authority.

13.     With his signature below and that of his counsel, the Defendant agrees that he has fully adopted this statement of facts as his own statement. The Defendant is adopting this statement of facts because it is a true and correct summary of the Defendant's own conduct.

14.    The Defendant is pleading guilty because the Defendant is in fact guilty.

MARLON COBAR
CHIEF
NARCOTIC & DANGEROUS DRUG SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

Date: _3/28/25_    By: _Douglas Meisel_

Douglas Meisel
Josh Katcher
Trial Attorneys

Date: _3/28/2025_    Approved By: _____

Melanie L. Alsworth
Acting Deputy Chief of Litigation

## DEFENDANT'S ACCEPTANCE

I have read this Statement of Facts with the assistance of my attorney, Elita Amato, Esq., who is proficient in Spanish. This Statement of Facts has been translated into Spanish for me. Further, I have discussed this Statement of Facts at length with my attorney. I fully understand this Statement of Facts and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Statement of Facts fully. I am pleading guilty because I am in fact guilty of the offense.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in the Plea Agreement. I am satisfied with the legal services provided by my attorney in connection with the Plea Agreement, Statement of Facts and matters related to it.


_____        3-28-2025
FABIAN EDILSON TORRES CARANTON          Date
Defendant


## ATTORNEY'S ACKNOWLEDGMENT

I am the Defendant's attorney. I am proficient in Spanish. I have fully explained to the Defendant, through use of translated plea documents, his rights and the applicable provisions of the Sentencing Guidelines. I have carefully reviewed every part of this Statement of Facts with the Defendant. The Defendant is entering into this Statement of Facts voluntarily, intelligently, and with full knowledge of all consequences of the Defendant's plea of guilty.


_____        3-28-2025
ELITA AMATO, ESQ.                       Date
Attorney for Defendant


6